The opinion of the court was delivered by
''"^White^J.
T7. H. Dinkgrave, administrator of this estate, filed on •the 3d April, 1878, a final account. He charged himself with $5104 25 .-and credited .himself with -:$5186 90 mortgage and privilege debts, and *704 $590 51 of ordinary debts were acknowledged, thus showing the estate to be insolvent. Among the debts stated as privileged was/$1000 paid the surviving widow, ancy$250Qipaid the State of Louisiana as a mortgage creditor/ f
S. Meyers, who was placed on the account as an ordinary creditor, opposed its homologation on the grounds—
1st. That the administrator was legally chargeable with the difference between the total of the inventoried price of the real estate in the first inventory and the amount which it brought at the sale, $4000.
2d. The same difference as to sale of certain warrants, $2000.
3d. That only $500 had been paid the State of Louisiana, hence the administrator should account for $2000.
4th. That the sum reserved to the widow in necessitous circumstances was not due, $1000.
Making a total of increase in favor of the creditors in consequence of an increase in the active and decrease in the passive of $5786.
He prayed the amendment of the account in accordance with the foregoing. Thereafter the following persons, not placed on the account, joining in the opposition of Meyers, claimed to be placed thereon: G. W. McEee for $41 20, debt due by account, with five per cent from 27th August, 1876 ; D. A. Breard, claiming to be a creditor for $55 30, with five per cent from August 28th, 1878; Frank Terrell, claiming to be a creditor for $118 76; J. S. Sanders, likewise so claiming, for $63, with five per cent from 1st January, 1877.
The administrator filed answers to all the oppositions, denying the existence of the debts. He pleaded various prescriptions against the several opponents. The lower court allowed the claim of McFee in full, as also that of Terrel], and partly allowed the claims of the others. The grounds of opposition urged to the various items were all disallowed, except the objection to the credit claimed- from the stated payment of $2500 on a sum due the State; this was reduced to $750. The administrator appeals, and the opponents answer by praying the allowance of their claims in full.
Ve will first consider each separate opposition, and then pass upon the grounds of complaint common to all the opponents.
1. McFee’s claim is on an account of $41 for drugs. The account is detailed, and its correctness sworn to by the claimant, on the 8th of January, 1877, before a deputy recorder, and below the jurat of the recorder is a written acknowledgment of the correctness of the claim, signed by the administrator, but not dated. He now contends that the account should not have been allowed, because not proved, and because prescribed. The debt, although not otherwise proven, was sued on as an acknowledged account, and contains on it the written recognition and *705 allowance of the administrator. It is urged that the signature of the administrator was not proven, which is a fact. But as we have seen, the claim was stated in the opposition as an acknowledged one, and the account was annexed to the opposition with the acknowledgment on it, and although the administrator took the precaution to file an answer to the opposition, he did not deny his signature to the written acknowledgment, and allowed it to be offered in evidence without objection. We cannot hear him under this state of things complaining of the want of proof of signature. He contends that inasmuch as the acknowledment is undated it can have no other date, without proof, than that of the filing of the opposition to which it was annexed, that is April 4,1878, at which date the account was prescribed, hence rendering the acknowledgment unavailing, an administrator being without power to renounce prescription. Granting the correctness of the proposition, as a matter of fact, it is not sustained by the record. The account, as we have seen, was sworn to before a deputy recorder on the 8th January, 1877, and the aclcnoioleclgvient follows the jurat, and must have been made after that date — considering that date as fixing the acknowledgment, the prescription had not accrued, and the claim was therefore properly allowed.
2. D. A. Breard. This claim also is by open account. The administrator complains that it was improperly allowed, because not shown to be due, $nd because prescribed. The account had been duly sworn to on the 8th day of June, 1877, and as thus verified, was offered without objection, and was therefore prima facie proven. Of course the ex parte affidavit was not binding on the administrator, and would not have been admissible if its offer had been resisted, but when permitted to go in proof without objection, we think made a prima facie showing for the opponent. The account contains mention of a credit of $50 paid August 23, 1876, without the interruption resulting from which prescription would have accrued. It is contended that the payment not having been proven, the prescription must be considered as having been vested. But the prima facie proof of the account carried with it that of the item of credit. The lower court considered that the. payment of fifty dollars was imputable to the oldest items in the account, and so ordered, thus extinguishing all the items therein up to March 31st, 1876. It also considered that as the payment was made on the 23d August, 1876, and the judicial demand against the estate on the 8th April, 1878, all items in the account prescriptible in one year under 0.0. 3534 were barred. Under this ruling it deducted from the account items amounting to $6 35. We think the finding both as to law and fact entirely correct, and although the administrator urges by brief that other items charged in the account are covered by the terms of . G. 0. 3534, we do not so consider.
*706 3. The claim of Meyers is upon an account for $84 42 and a note for $105 — subject to a credit of $25: $80 and $84 42=$164 42. The lower court declared the note barred b.y prescription, and struck from the account two items, one for merchandise, Eaton Logwood, $16 75; the other to the same effect for $10. These items were stricken from the account, because the merchandise covered by them was sold to Eaton Logwood on the security of the deceased, and because no effort had been made to collect from Logwood,- hence the surety was discharged. We find no proof to this effect in the record, and as the account was placed on the administrator’s tableau, and thus acknowledged by him, we think there was error in striking off the items. The note was evidently prescribed, maturing in April, 1869, when the tableau of the administrator was filed on the 3d April, 1878, the period of prescription had been accomplished. The account having been stated by the administrator in his list of ordinary debts, did not quoad the administrator require other proof ?
4. The administrator does not complain of the allowance of the sums due Sanders & Terrell, and if he did, they are indubitably established.
Thus disposing of the claims of the various opponents, we will examine the objections to the credits, claimed by the administrator and objected to by the opponents, then the debts which it is contended should be increased.
1st. The credit as to the $2500 mortgage debt due the State results from the following facts: The deceased was a tax collector, and as such owed the State say $3200, mostly for the revenues of 1876. The surety on his bond made an arrangement in 1877 with the Auditor of Public Accounts, by which the indebtedness was compromised or agreed to be compromised on the payment into the State treasury of twenty-five hundred dollars in valid State warrants. This having been done, on the 14th February, 1878, the Auditor of Public Accounts, issued a quietus, in which he recited that, “ whereas, B. H. Dinkgrave (through Jno. T. Ludeling for sureties) A * * has exhibited * * * the receipts of the Treasurer in full for the payment of the State taxes for the year 1874, $2500, compromise settlement, I therefore issue this quietus.” * * The Auditor, whose testimony is in the record, says that the payment was made in “valid-State warrants.” The opponents contend that, as such warrants were only worth twenty cents on the dollar at the date of the settlement, the estate is fairly chargeable only with the value of the warrants, that is $500, instead of their face value, $2500, charged in the account. The lower court sustained the proposition, and as a matter of fact found the warrants were worth at the time of the settlerfient thirty cents on the dollar, and allowing for them at that rate reduced *707 the credit from $2500 to $750. We think it correctly applied the law and facts. The contract of suretyship is essentially a beneficent one, and whilst the surety who paid was legally subrogated, he was so only to the extent of his actual and necessary payment. If he made an ad- . vantageous settlement the benefit of such payment was as much the principal’s as his own. Indemnification and not profit is the measure of the surety’s recourse against the principal, as taught by our law and the jurisprudence thereunder.. C. C. 3052; 7 N. S. 9; 5 R. 506; 3 A. 627. In fact such was the rule under the Roman law, whence the law of surety-ship as existing in our Code has been in a large measure drawn. “Sciendum est non in plus fidejassorem conseguí debere mandati judicio quam quod solveret.” Pand. t. 26, sec. á, D. Mandati. The like principle is applied under the Napoleon Code, whose text on the subject is like our own, for, as said by Troplong, “ suretyship is entered into as a means of service, not as an instrument of profit.” Troplong du Cautionnment, No. 312, p. 302. It is said that as the certificate of the Auditor did not disclose the payment to have been made in warrants, the administrator was justified on its presentation in paying the full amount to the surety. The record does not disclose the payment, and if it did, the result would be unchanged, for if the administrator paid without filing an account, he is in no better position than the surety would be. It is urged that the surety may have been the owner of the warrants — may have acquired them before the settlement; at a time or under circumstances making them as to him represent their face value. Grant that under such circumstances the market value would be no criterion or standard by which to measure the surety’s subrogation, there is no proof whatever to that end. The burden was on the surety, Pickett vs. Bates, 3 An. 628, more especially where the payment in warrants and” the market value thereof was shown by the opponents. The value of the warrants as fixed by the lower court is sustained by the proof. The other items of opposition were rejected by the court below, and we think correctly so; and as the effect of the reduction of the credit just referred to is to provide adequate means for the payment of all the opponents, we are dispensed from further examining at length the very •satisfactory and careful scrutiny given, the issues presented, by the lower judge.
It is therefore ordered that as to all the oppositions, except that of •S. Meyers, the judgment below be affirmed with costs; that as to S. Meyers the judgment be amended by increasing the sum allowed by $26 75; the costs of both courts to be borne by the succession.